Parness, J. P.
(dissenting). Since nothing in law or logic warrants the application of the rent laws to a partially enclosed cubicle set up in the dormitory of a lodging house, I respectfully dissent and would reverse the order appealed from and reinstate the holdover petition.
The space sought to be recovered in this proceeding is 1 of 121 cubicles subdividing dormitory quarters on the second through fourth floors of the Palace Hotel, located at 317 Bowery, Manhattan, an establishment described in its certificate of occupancy as a lodging house and known in the vernacular as a "flophouse”. The building’s fifth and sixth floors contain two communal dormitories, housing approximately 100 tenants in single beds. The cubicle here in issue measures approximately 6V2 by 5 Vi feet, barely large enough to accommodate its only furnishings, a single bed and locker supplied by the petitioner lessor. The cubicle has no window nor does it contain kitchen or bathroom facilities. (Tenant has access to a bathroom in a common hallway.) Tenant’s space is *966 "partitioned”, at least to the extent that it is partially separated from adjacent cubicles by a series of seven-foot dividers which extend part way from floor to ceiling. Under prevailing house rules, tenant is precluded from installing a telephone or other electrical appliance and is allowed no visitors in the cubicle. Tenant pays rent of $6 plus tax per night under an oral lease.
A "lodging house” is defined by statute as "a multiple dwelling, other than a hotel, a rooming house or a furnished room house, in which persons are housed for hire for a single night, or for less than a week at one time, or any part of which is let for any person to sleep in for any terms less than a week.” (Multiple Dwelling Law § 4 [14].) In practical terms, a lodging house tenant receives shelter and is issued a bed on a transient basis, and in exchange pays a modest rent measured typically at a daily rate. The bed provided to a lodging house tenant may be situated in a "dormitory” — a term defined as "any place used for sleeping purposes * * * in a lodging house” (Multiple Dwelling Law § 4 [21]) — or, as in this case, in a "cubicle” — defined as "a small partially enclosed sleeping space within a dormitory with or without a window to the outer air” (id.). I find puzzling the majority’s treatment of such a "partially enclosed sleeping space” as a distinct jural entity, a treatment at odds with the clearly expressed intention of the Legislature that lodging house cubicles "shall not be considered rooms or alcoves but parts of the rooms in which they are constructed.” (Multiple Dwelling Law § 66 [6].)
The space let in a lodging house, whether in the form of a cubicle or a portion of an undivided dormitory, necessarily will lack many of the basic characteristics typically identified with urban residential "housing accommodations”, for example, kitchen and bathroom facilities and walls fully separating one unit from the next and each tenant from his or her neighbors. It thus seems unreasonable to equate the rental of a bed in a lodging house with the rental of a "housing accommodation”, since neither the bed itself not the surrounding space fairly constitutes "a residence, home, dwelling unit or apartment” (Rent Stabilization Code [9 NYCRR] § 2520.6 [a]). Simply put, the law does not, or at least should not, extend stabilization protection to a mattress. The majority’s decision in effect accomplishes just that, based upon an unduly expansive construction of the code definition of the term "housing accommodation” to include any and all rented space in which a tenant lives, no matter how structurally indistinct *967 or amorphous that space may be. Such a construction, "which would make [the] statute absurd, or lead to absurd results, should be avoided”. (McKinney’s Cons Laws of NY, Book 1, Statutes § 145.)
In its haste to avoid the displacement of an impecunious tenant, the majority today misconstrues operative legislation and ignores common sense. The fallout of its decision, I am afraid, will extend well beyond the parameters of this particular dispute and impose upon lodging house proprietors in general an undue and legislatively unintended burden from both a logistical and economic standpoint. Regrettably, this in turn may render scarce the inexpensive and ready shelter that lodging houses traditionally have provided to New York’s poorest and neediest tenants.
McCooe and Glen, JJ., concur; Parness, J. P., dissents in a separate memorandum.